# PETEFISH, SKILES & CO.

## v.

## WILLIAM WATKINS.

*Filed at Springfield March 28, 1888.*

1. PAYMENT—*misapplication of proceeds of new loan to other indebtedness than as directed.* A party having a note in bank, executed another note with security, payable to a third party, who was willing to loan money on the same, and left the new note with the cashier of the bank, upon which the bank received the amount called for on its face: *Held*, that if the debtor, at the time he delivered the second note to the bank, directed its application upon the other note, or if it was agreed that the proceeds of the last note should be received and receipted on the note first given, the bank was bound to so receive it and apply it, and could not apply the same on other indebtedness of such debtor.

2. If, at the time of the execution and delivery of a note to a bank, there is an agreement between the bank and the principal maker and his surety, that the note is given temporarily until the money can be borrowed elsewhere, and that, when so borrowed, it shall be applied on the note, it will not be in the power of the bank and the principal maker lawfully to divert the proceeds of the loan, and apply it on other indebtedness of the principal to the bank.

3. A executed a note, with B as surety, to a bank, under an agreement that as soon as the bank should procure a loan for the amount, A and B were to execute another note to the party loaning, and the proceeds should be applied in payment of the note first given. The new note was signed by A and B, the latter telling A to take it to the bank, but not to give it up until he obtained the first note. In a suit on the note in bank, B was allowed to prove his direction to A. The court, in an instruction, stated that this testimony could have no force unless the directions were communicated to the bank: *Held*, that the admission of the evidence was not reversible error.

4. SURETY—*discharge of principal.* If the liability of the principal in a note is discharged by payment, the liability of the surety will be extinguished.

5. NEW TRIAL—*newly discovered evidence.* It is the general doctrine, that new trials will not be granted to enable a party to introduce newly discovered evidence merely cumulative in character, except it is decisive of the case, conclusively leading to a change in the result; and it must also appear that the party applying for a new trial has used due diligence for the discovery and production of the alleged newly discovered evidence.

6. ERROR *in favor of party complaining*. A plaintiff can not complain of an error in an instruction given for the defendant, which enlarges the burden of proof on the defendant to show a defence, and which in no way operates to the plaintiff's prejudice.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Cass county; the Hon. LYMAN LACEY, Judge, presiding.

This was an action of assumpsit, in the Cass circuit court, upon a promissory note, given by Elijah Watkins, and appellee, William Watkins, to appellants, (plaintiffs below,) for $1000, dated April 19, 1884, and, in effect, payable on demand, to appellants, bankers. Elijah Watkins was defaulted. William Watkins pleaded tender and payment, upon which issue was taken. The trial by jury resulted in a verdict and judgment for the defendant, William Watkins. On appeal to the Appellate Court for the Third District, this judgment was affirmed, and plaintiffs below prosecute this further appeal.

On the trial the plaintiffs introduced in evidence the note declared on, and rested. The defendant, William Watkins, introduced evidence tending to show that he signed said note as surety for Elijah Watkins, and that it was understood and agreed by the parties that the loan by appellants, for which said note was given, was temporary, only, and that said note would be taken up, and he released from his liability thereon, as soon as a loan for a like amount could be obtained from some outside party, by appellants, for said Elijah. The cashier of appellants, with whom said agreement was made, represented that he thought the money could be obtained from one Robert Taylor; that upon this agreement and understanding the note was executed by the defendant, William, and the money procured thereon was used by said Elijah in the purchase of a livery stable; that about a month thereafter the cashier of appellants said to defendant, William Watkins, the money to take up said note could be procured of Robert Tay-

lor, if he, William Watkins, would go said Elijah's security therefor, and a mortgage be given on said livery stable, as additional security,—to which appellee consented, and upon being presented with a note for the same amount, payable to said Taylor, signed the same, and directed said Elijah to take it to the bank of appellants, and exchange it for the note now in controversy, and that said Elijah took said Taylor note, together with the mortgage mentioned, and delivered the same to appellants, in payment of the note in suit; that the cashier of appellants received 'said Taylor note in payment of the note in suit, but. stated "that the vault was closed," but the first note (the one sued on) would be cancelled in the morning, and put with the witness' checks; that the defendant had no notice,. until some nine months thereafter, that the note in suit had not been surrendered up as paid. It is a conceded fact that the $1000 derived from the Taylor loan was in fact applied by the bank upon the individual indebtedness of Elijah Watkins. to the bank.

On the part of appellants, the agreement and understanding before mentioned, and the subsequent conversation in respect to the execution of the Taylor note, and the direction said to have been given by Elijah to the cashier of appellants, that the Taylor note was delivered in payment of the note in suit, and the statement of the cashier as to the note being in the locked vault but would be cancelled and surrendered, are denied, and evidence introduced tending to show that no such arrangement or agreement was made; that the Taylor note and the note in suit were executed without any understanding or agreement. whatever, other than as evidenced by the notes themselves; that said Elijah owed plaintiffs, by individual note, $1600; that he had $240 to his credit in the bank, and that it was then understood and agreed between Elijah and the cashier of plaintiffs, that the $1000 derived from the Taylor note was to be applied upon his individual indebtedness; that Elijah, at the same time, gave his individual note for $400, and his

check for the balance of said $1600, and that the bank had no notice of any direction given by the defendant, William, to said Elijah, in respect to the application of the Taylor note, or its proceeds, in payment of the note in suit.

Messrs. KETCHAM & GRIDLEY, for the appellants.

Mr. R. W. MILLS, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The controverted questions of fact are conclusively settled by the judgment of the Appellate Court, and we are not permitted to consider, for that reason, many of the questions pressed upon our attention by counsel, in argument. It is, however, insisted, that the court erred in giving an instruction on its own motion, and in modifying the fourth of appellants' series, and in the admission of testimony.

The fourth of appellants' instructions, as asked, told the jury, that before they could find for appellee, on his plea of payment, it must appear, by a preponderance of the evidence, that the note had been paid. And if appellee asserted that the note was paid by the money procured on the Taylor note, he must show, by a preponderance of the evidence, that the plaintiffs agreed with him to accept said Taylor note, or some note to be given, to apply in payment of the note in suit. The court modified the same by adding: "Or that it (the Taylor note) actually was applied in payment of the note in question, at the time of its delivery." If Elijah Watkins, at the time he delivered the Taylor note to appellants, directed its application upon the note in suit, appellants would be required to so apply it; or if it was agreed, as testified to by Elijah Watkins, between himself and the cashier of appellants, that it should be received and accepted by the bank in payment of the note in suit, appellants would be bound to so receive it. The instruction, as drawn, omitted this phase of the case clearly made by

the evidence introduced by defendant, and the modification was therefore proper.

The instruction given by the court on its own motion, was, in substance, that the points in controversy in this case are: First, was, or was not, there an arrangement or understanding between the plaintiffs and the defendant, William Watkins, in connection with Elijah Watkins, that the note in evidence was given for a temporary purpose, and signed by William Watkins, as surety, until money could be borrowed elsewhere, and then such money should be applied on the note sued on, and the defendant, William, released. Second, when the Taylor note was delivered to Oliver (cashier of appellants) by Elijah, was it, or not, agreed between them that the Taylor note should be applied on the individual indebtedness of Elijah Watkins, etc., or was it agreed to be applied in payment of the note in suit, etc. The jury were then told, if they found the first proposition in the affirmative, their verdict should be for the defendant, William Watkins; and on the other hand, they were told, if they did not believe, from the evidence, there was such an arrangement or agreement as mentioned in the first proposition, and that Elijah consented to the application of the proceeds of the Taylor note on his individual indebtedness, the finding should be for the plaintiffs, on the plea of payment, notwithstanding William Watkins may have directed Elijah to apply the Taylor note on the note in suit, if the bank had no notice of such direction. If, upon the second proposition, they found, from the evidence, that the Taylor note, at its delivery, was agreed to be applied on the note in suit, they should find for the defendant, whether the agreement mentioned in the first proposition existed or not.

The first criticism is, that the jury were, by the first proposition, directed as to whether or not there was an understanding and agreement between the plaintiffs and the defendant, William Watkins, "in connection with Elijah Watkins," that the note was given for temporary purposes, etc. If this was error,.

it is clear it is one of which appellants can not complain. Manifestly, such an arrangement, if made between the plaintiffs and William Watkins, would require the plaintiffs to receive the proceeds of the Taylor note and apply them upon the note in suit. And the fact that the court seemingly required that the arrangement should have been made between the plaintiffs, and William Watkins and another, thereby enlarging the burden of proof upon the defendant, William Watkins, could in no way have operated to the prejudice of appellants.

It is also insisted the instruction is erroneous, in that the jury were thereby told that if they found affirmatively upon the first proposition, they should find for the defendant, notwithstanding they also might find that Elijah consented to the application of the Taylor note upon his individual indebtedness. This was not error, for if appellee was induced to execute the note in suit, and, subsequently, the Taylor note, under the arrangement and understanding in the first proposition mentioned, it would not be in the power of the plaintiffs, even with the consent of Elijah, lawfully to divert the proceeds of the Taylor note, and apply the same upon the individual indebtedness of Elijah Watkins, and thereby leave both of said notes outstanding against appellee.

The only remaining criticism is as to that part of the instruction which told the jury, if they found that the Taylor note was, at its delivery, actually applied in payment of the note in suit, they should find for the defendant, whether there had been any previous arrangement or agreement, or not. Whether the Taylor note, or its proceeds, was received by appellants in payment and discharge of the note in suit, was a question of fact, which was properly submitted to the jury, under the instructions. The liability of appellee being that of surety, if the liability of his principal was discharged by appellants receiving the Taylor note, or its proceeds, in payment, the liability of appellee was extinguished.

It is also insisted that the court erred in permitting appellee to testify that when he signed the Taylor note he handed it to said Elijah, to take to the bank, and told him not to give it up until he got the first note,—the note in suit. It may be conceded that this evidence could have no force, and it was stated by the court, in the instruction given on its own motion, that this evidence was entitled to no force, unless communicated to appellants, or they had notice of the direction thus given. Its admission, however, was not reversible error. In view of the facts, it can not be seen that it could have prejudiced appellants' case, if inadmissible. The jury were fully and correctly instructed in respect of this matter. By appellants' first instruction they were expressly told, that although they might believe, from the evidence, that appellee "instructed and directed his son, Elijah, to take said Taylor note and mortgage to the bank of plaintiffs, upon the condition that plaintiffs cancel and deliver up the note in suit," yet, unless it was shown, by a preponderance of the evidence, that there was an agreement by appellants that the Taylor note, etc., should be accepted by appellants as payment of the note in suit, the jury must find that it was unpaid, etc.

It is also insisted that the court erred in overruling the motion for a new trial, predicated upon newly discovered evidence. It will be sufficient to say that the evidence alleged to be newly discovered related to declarations alleged to have been made by the defendant, William Watkins, in relation to his liability, etc., upon the note sued on. Aside from the fact that the witness who, it is alleged, would testify thereto, is so contradicted as to render it doubtful whether such declarations were made, the evidence, if admitted, would not be conclusive of the case, and is cumulative, merely, to evidence introduced by appellants at the trial. It is the general doctrine, that new trials will not be granted to enable a party to introduce evidence merely cumulative in character. (*Schlencker* v. *Risley*, 3 Scam. 483; *Crozier* v. *Cooper*, 14 Ill. 139; *Skelly* v. *Boland*,

78 id. 438; *Laird* v. *Warren,* 92 id. 204; *McCollom* v. *Indian-apolis and St. Louis Railroad Co.* 94 id. 534.) And if not conclusive upon the issue, a new trial will not be granted,—that is, the evidence must be of such character and importance in respect to the issue, that it satisfactorily appears that upon a re-trial, with the newly discovered evidence, the result will be different, the rule being, that where the evidence sought to be introduced is cumulative, new trials will not be granted unless the evidence is decisive of the case, conclusively leading to a change in the result, and it must appear that the party offering it has used due diligence for its discovery and production. *Smith* v. *Shultz,* 1 Scam. 490; *Martin* v. *Ehrenfels,* 24 Ill. 187; *Chapman* v. *Burt,* 77 id. 337; *Hayes* v. *Houston,* 86 id. 487; *Wood* v. *Echternach,* 65 id. 149.

It is manifest the evidence here offered was not of the character indicated, and the motion for a new trial was properly overruled.

Finding no error, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*