BEN PETERS (A FREEDMAN) *vs.* THE STATE.

[INDICTMENT FOR LARCENY OF MULE.]

1. *Larceny of mule by freedman; punishment of.*—For the larceny of a mule at any time between the 20th day of July, 1865, and the 21st day of September next thereafter, a freedman cannot be convicted and punished under the act approved October 7, 1864, but may be under section 3180 of the Code.

2. *Organization of grand jury.*—In criminal cases, it is the better practice to set out in full, in each transcript, the minute-entry showing the organization of the grand jury.

43

3. *Personal presence of prisoner in court when sentence is pronounced.*—To sustain a judgment and sentence on conviction for felony, the record must affirmatively show that the prisoner was personally present in court when sentence was pronounced on him.

FROM the Circuit Court of Henry.
Tried before the Hon. J. McCALEB WILEY.

THE indictment in this case was found on the 28th October, 1865, and charged " that A. J. Maynor and Ben, *alias* Ben Peters, a freedman, feloniously took and carried away one mule, the property of A. J. McAllister." A *nolle-prosequi* was entered as to the defendant Maynor. The defendant Peters interposed the following plea: "that this court can not of right exercise jurisdiction in this case, because, if he, said defendant, is guilty of the crime as charged, which he protests and denies, he was at the time a slave under the laws of Alabama, and not a freedman; that the alleged offense, if committed at all, was before the passage of the ordinance abolishing slavery in Alabama." The record does not show the action of the court on this plea, but the minute-entry states that the defendant went to trial on the plea of not guilty.

" On the trial," as the bill of exceptions states, " the State introduced A. J. McAllister as a witness, who testified, that he missed a mule from his pasture on the 15th September, and, while in search of his mule, he met the defendant, who stated that he bought the mule from Gamble at the ferry. Witness stated, that he may have told the defendant, if he did not confess how he came by the mule, that he would enforce the law against him; was not certain that he did so threaten him. Objected to by defendant's counsel; objection overruled. Said Gamble stated, that he did not sell the mule to the defendant. Witness Maynor stated, that defendant came to his house, on Sunday, the 17th September, riding the mule, and said he had bought it from Gamble at the ferry; that he (witness) accompanied the defendant to Eufaula, and rode the mule part of the way; and that the mule was traded on their way back; but witness would not state who traded the mule. This was all the evidence in the case.

Ben Peters (a freedman) v. The State.

"The court charged the jury—1st, that the voluntary confessions of the defendant were competent proof, and that the confessions in this case were voluntary ; 2d, that slavery no longer existed in Alabama, after the United States military forces took possession of the State ; 3d, that the act of October 7, 1864, making horse-stealing a capital offense, was constitutional, and needed not the ratification of the State convention to make it the law of the land ; to all which charges, as well as the rulings of the court on the pleadings, the defendant, by his counsel, duly excepted."

The jury returned a verdict of guilty, and sentenced the defendant to fifteen years imprisonment in the penitentiary. After conviction, the defendant moved in arrest of judgment, on the following grounds : 1st, that said act of October 7, 1864, under which defendant was tried and convicted, was not in force at the time of the commission of the offense charged ; 2d, that the defendant, at the time the offense was committed, if at all, was a slave, and not a freedman ; and, 3d, that a copy of the *venire* was not served on the defendant as by law required." The court overruled the motion in arrest, and pronounced sentence according to the verdict.

W. C. Oats, for the prisoner.
Jno. W. A. Sanford, Attorney-General, *contra.*

BYRD, J.—The act of the 7th October, 1864, was not in force in this State, from the 20th day of July, 1865, to the 21st September, 1865.—*Jeffries & Jeffries (freedmen) v. The State,* at the present term. The prisoner could not, therefore, be punished under that act, as the evidence set out in the record shows that the offense committed, if any, was in September, 1865, prior to the 21st day thereof. Under this indictment, if the prisoner is found guilty on another trial, he can be sentenced as prescribed by sections 3180 and 3621 of the Code. All the evidence purports to be set out, but there is no proof of venue ; and the jury fixed the term of imprisonment. These are errors, and this cause must be reversed.

Did the court err in overruling the objections of defend-

ant to the admissibility of the testimony of the witness McAllister? It does not appear, except by an unsatisfactory inference, that the witness made the threat before the defendant made the statement "that he bought the mule from Gamble at the ferry." It might also be inferred that the witness made the threat after the statement of the defendant, to induce him to confess. But this is equally unsatisfactory. In this state of the record, and as the question may not arise again in the same form, we deem it unnecessary to pass upon it.—*Mose v. The State*, 36 Ala. 211; *Brister v. The State*, 26 Ala. 107.

[2.] The record in this case is defective, in not showing that the grand jury was duly organized at the term of the court at which the indictment was filed. The only evidence that there was a grand jury, is the return endorsed on the indictment by the foreman. As this case is reversed on other grounds, we will give no opinion on this point; but suggest that the better practice is, to set out the minute-entry, in full, of the organization of the grand jury, in the transcript of each case in which an appeal is taken in a criminal prosecution.

[3.] It does not appear from the record that the prisoner was present when sentenced.

Let the judgment be reversed, and the cause remanded, and the prisoner will remain in custody, until discharged therefrom by due course of law.